(173 App. Div. 601)

In re SMITH.

(Supreme Court, Appellate Division, First Department.   July 10, 1916.)

ATTORNEY AND CLIENT ⬤⟿44(2)—SUSPENSION OF ATTORNEY—MISCONDUCT.
    The act of an attorney, in indorsing in disguised handwriting the signature of his client upon a check payable to such client's order, for the

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

purpose of securing his disputed claim for 50 per cent. of the amount as his attorney fee, *held* to be improper conduct, warranting the suspension of such attorney.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 56; Dec. Dig. ☜44(2).]

Application on the report of the official referee for the punishment of Thomas H. Smith, an attorney and counselor at law, upon charges of professional misconduct.    Respondent suspended.

Argued before CLARKE, P. J., and SCOTT, DOWLING, SMITH, and PAGE, JJ.

Einar Chrystie, of New York City (George Thoms, of New York City, of counsel), for petitioner.

Thomas H. Smith, of New York City (John MacGregor, of New York City, of counsel), for respondent.

CLARKE, P. J.    The respondent was admitted to the bar in May, 1880.    The gravamen of the charge contained in the petition is that the respondent, without authority, indorsed his client's name to a check received by him on behalf of said client, cashed the same, and converted one-half of the proceeds to his own use.

The undisputed evidence established that some time prior to 1912 one Mary A. Pugh died intestate, a resident of Kings county, leaving a small estate, which was administered by the public administrator of that county.    The residue of the state, after the payment of debts and administration expenses, was ultimately paid over to the state treasurer to await proof of kinship.    It appears that the decedent's only next of kin was one Lawrence P. Hyland, a first cousin, residing in Dublin, Ireland.    Hyland, under date of November 29, 1911, executed and delivered to Messrs. Perkins & Trautwein, of New York, a power of attorney authorizing them to proceed "at their own cost and expense" to establish and recover his interest in said estate, and agreeing to pay them for the services thus rendered 50 per cent. of the amount recovered, which amount was thereby assigned to them.    Perkins & Trautwein were not lawyers, and what, if anything, they did in the matter does not appear.

Some time thereafter Crowley & Bolger, Hyland's attorneys in Dublin, wrote to Charles O'Conor Irwin, a neighbor and friend of the respondent in New York City, and he in accordance with their instructions retained the respondent to establish Hyland's kinship and right to the fund.    The power of attorney, theretofore given to Perkins & Trautwein, was thereafter given to the respondent by Irwin or sent to him by Crowley & Bolger.    The respondent thereupon took such necessary proceedings as resulted in an order of the surrogate of Kings county directing the state treasurer to pay the balance of the fund, amounting to $653.83, to Hyland.    Pursuant to said order, the state treasurer drew his check in that amount to the order of Hyland and delivered the same to the respondent.    The respondent, without authority, indorsed Hyland's name on the check in a disguised hand, affixed his own signature thereto, and procured it to be cashed by a friend.    Upon the receipt of the proceeds, the respondent promptly

sent one-half of the same, less the cost of exchange, to Crowley & Bolger in Dublin, accompanied by the following letter:

"Thomas H. Smith, Attorney and Counselor at Law,
"105 West 10th Street, Borough of Manhattan, New York City.
                                              "April 3/14.
            "Estate of Mary A. Pugh, Dec'd.
"Messrs. Crowley & Bolger—Gentlemen:
   "Inclosed please find draft for £66/14½/2 to your order. I received from the state of New York as per the inclosed statement the sum of six hundred and fifty-three dollars and eighty-three cents ($653.83), of which under agreement I have retained one-half, amounting to $326.91. The cost of the draft is $4.90, leaving a balance due you of sixty-six pounds, fourteen shillings, two pence, which I inclose and for which you will kindly mail me a receipt. With my kindest regards and with the love of an Irishman's son who never saw Ireland, but hopes to see it before long, and that Home Rule will succeed, I remain,
            "Yours very truly,                    Thos. H. Smith."

Crowley & Bolger acknowledged the receipt of the draft in a letter dated April 24, 1914, which is as follows:

                                              "24th,        4.
"Dear Sir:
            Estate of Mary A. Pugh, Dec'd.
   "We duly received yours of the 3d inst. with inclosures therein referred to. We observe that you have retained one-half of the amount received, as you say, under agreement. We are not aware that any such agreement was entered into and that you would only charge the usual professional fee to which you were entitled according to the practice of your courts. You must remember that this matter was intrusted to you in consequence of what we considered the excessive charge of Mr. Perkins, whose fee was the same as you now charge, and, this being so, there would be no object in making any change if there is no advantage to our clients. We trust, therefore, you will reconsider the matter, and, after deducting a reasonable fee, we hope to get a check for the difference.
            "Yours faithfully,                    Crowley & Bolger.
"Thomas H. Smith, Esq., Solicitor,
   "105 West 10th Street, New York."

Negotiations between Crowley & Bolger, Irwin, and the respondent resulted in the respondent's giving Irwin, in June, 1914, a check for $75 drawn to the order of Crowley & Bolger in settlement of the matter. Irwin sent the check to Crowley & Bolger, who indorsed it and returned it to him. He thereupon cashed the check, retained $25 for himself, and sent $50 back to Crowley & Bolger.

There is a sharp conflict of evidence as to the terms of the respondent's retainer. The respondent claims to have been retained upon a 50 per cent. basis, as were Perkins & Trautwein before him. Irwin, on the other hand, testified that it was agreed that the respondent should receive for his services a fee of $100. It is clear from the letter of Crowley & Bolger, acknowledging the receipt of the money sent them by the respondent, that they knew of no definite agreement with the respondent as to the amount of his compensation. It is undisputed that Irwin, from the beginning, contemplated some compensation for his own services out of the fund recovered by the respondent, and that Irwin's first information of the collection of the money came from Crowley & Bolger some six weeks thereafter. The

evidence fairly establishes that the matter was taken from Perkins & Trautwein on account of what Crowley & Bolger considered an excessive claim for services, and I think, as the referee concludes, that the preponderance of evidence indicates that it never was agreed that the respondent should receive for his services 50 per cent. of the amount collected.

It does not appear, however, that Crowley & Bolger made any further demand upon the respondent after the receipt of the second remittance of $75, and the petitioner concedes that the retaining of the money by the respondent was not a conversion. The evidence as to the retainer is, however, important in considering the motive of the respondent in indorsing his client's name on the check. As stated by the referee:

"No loss ensued to his client as a necessary incident of the manner in which the respondent indorsed the check. From such an action, however, surreptitious intention might be, and in the state of facts shown by the record should be, inferred."

The referee concludes:

"The respondent's handling of the matter from the time of the receipt of the check from the comptroller of the state of New York shows that he lacked a proper appreciation of ethical conduct, and his acts should not pass unnoticed. I find the respondent guilty of misconduct in his profession."

We think the act of the respondent in indorsing a simulated signature of his client upon the check drawn to his client's order was highly improper, and was undoubtedly done so that, having obtained possession of the cash, he would be in position to assert his claim.

For his professional misconduct the respondent is suspended for two years, with leave to apply for reinstatement at the expiration of that term upon proof of his compliance with the conditions to be incorporated in the order to be entered hereon. All concur.